RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 10/04/05

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DIRECTV, INC. | : | DOCKET NO. 2:04 CV 0130 |
| VS. | : | JUDGE MINALDI |
| CHRIS DREWS | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is Directv's Motion for Summary Judgment, or in the Alternative, Motion to Strike Chris Drews' Answer. The time for an opposition to be filed has expired therefore, the court will consider this motion unopposed.

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with

affidavits, that demonstrate the absence of a genuine issue of material fact.[1] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

Facts

On May 25, 2001, Directv executed Writs of Seizure at the mail shipping facility used by several major distributors of pirate access devices, including among others, Vector Technologies, DSS-Stuff, Shutt, Inc., White Viper Technologies, Intertek and DSS-Hangout. Directv obtained various business records evidencing the ongoing illegitimate enterprise, including orders, invoices,

---

[1] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

2

electronic communications, shipping documentation, purchase receipts and credit card receipts. These records indicate that Drews purchased at least four pirate access devices from Vector Technologies.

Drews purchased a "Vector UL PRO with SU2 Code Enclosed Unlooper" and a "Vector Smart Card Emulator" on or about March 2, 2001. These devices were billed to and shipped to Drews at his address in Westlake, Louisiana.

Directv also obtained evidence that Drews purchased another "vector Smart Card Emulator" and "Vector UL PRO with SU2 Code Enclosed Unlooper" on or about April 4, 2001. This order was billed to Chris Drews, but was shipped to Brenda Drews at a different Westlake address.

Failure to Respond to Request for Admissions

On July 15, 2004, Directv properly served on Chris Drews, by certified mail, Directv's Interrogatories, Requests for Production of Documents, Requests to Inspect & Test Tangible Things, and Request for Admissions. Service was made upon Drews via the Hualapai Way, Las Vegas address provided by Drews in his answer. This discovery was delivered and received by Nikki Drews on July 23, 2004[2]. Drews never responded to these requests.

Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions, allowing a party to serve on "any other party a written request for the admission ... of the truth of any matters within the [general scope of discovery] set forth in the request that relate to statements or opinions

---

[2] In Box 7 of the certified return receipt, the notation "moved" is included. The defendant has an affirmative duty to advise the court of any address changes. This was the address provided by the defendant and the court was not notified of any change, therefore this will be considered effective domiciliary service.

of fact or of the application of law to fact." Fed.R.Civ.P. 36(a).³ The purpose of the rule is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed. 1994); Pickens v. Equitable Life Assurance Soc'y, 413 F.2d 1390, 1393 (5th Cir.1969). The served party has thirty days after service to respond to the request--by a written answer "specifically deny[ing] the matter" or "set[ting] forth in detail the reasons why [it] cannot truthfully admit or deny the matter" or by objecting to the request. Fed.R.Civ.P. 36(a). If a party fails to respond within thirty days, then "[t]he matter is admitted." Id.

Essentially, Rule 36 is a time-saver, designed "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed.1994) (emphasis added). When a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. *Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 -1269 (C.A.11 (Fla.), 2002). Once the matter is admitted, Rule 36(b) provides that it is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed.R.Civ.P. 36(b). In this case there has been no Rule 36(b) motion filed, so the facts are deemed admitted pursuant to Rule

---

³ FN22. The relevant portions of Rule 36(a) state that "[A] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters ... set forth in the request that relate to statements or opinions of fact or of the application of law to fact.... The matter is admitted unless, within 30 days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter.... The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.... If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served."

36(a).

## Law and Analysis

Directv filed its Complaint against Drews on May 22, 2003, seeking damages and other relief pursuant to the Federal Communications Act of 1934, 47 U.S.C. §605, and the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§2510-2522, as well as Louisiana law.[4]

Drews activated a Directv account on or about March 1, 2001.[5] As alleged in Directv's complaint, and as deemed admitted, Drews purchased devices designed to intercept Directv's signal within days of opening his account with Directv. Additionally, satellite equipment was purchased on or about January 24, 2001, and a Directv account was activated on January 30, 2001, in the name of Brenda Drews. The address indicated for this account is the same address as the billing on Chris Drews' April 4, 2001 purchase. Thus, Chris Drews possessed all the equipment necessary to intercept Directv's signal.

Drews maintained a Directv account, Total Choice, at a cost of around $32.00 per month from March, 2001 until approximately March, 2003 when he purchased additional premium programming for a few months. Services were disconnected May 31, 2003.

Directv has introduced testimony that it is common for Directv signal pirates to maintain a level of legitimate Directv services while engaging in piracy of the Directv signal. A substantial

---

[4] On May 18, 2004, the Court granted Directv's Motion for Voluntary Partial Dismissal of its claims under 18 U.S.C. §2512 and Louisiana state law for civil conversion.

[5] Directv account records, account history of Chris Drews.

amount of signal piracy investigated or discovered by Directv involves individuals who are Directv subscribers, or have been in the past.

Directv is requesting statutory damages for Chris Drews' uncontroverted piracy. Directv seeks damages, costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2).

47 U.S.C. §605 prohibits the unauthorized interception and reception of cable programming. This section allows the plaintiff to elect recovery of actual or statutory damages. 47 U.S.C. §605(e)(3)(C)(i)(II) provides that

> "the aggrieved party may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in an action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."

§(e)(3)(B)(iii) states that the court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails.

Directv complains that Drews violated section §605(a) of the Communications Act. Directv alleges that the defendant, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception, or exhibition of satellite programming transmitted by Directv. Directv alleges that Drews divulged or published the existence of contents, substance, purport, effect or meaning of such satellite communications. The plaintiff alleges that Drews used such communications for his own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is prohibited by 47 U.S.C. §605(a). Directv is requesting that it be awarded statutory damages of $10,000 in accordance with

this provision.

In addition to finding liability pursuant to §605, the plaintiff asks this court to find that a private right of action exists under 18 U.S.C. §2520 based upon the defendant's interception of Directv's encrypted satellite transmissions in violation of 18 U.S.C. § 2511(1)(a). This court previously held that §2511 is a criminal provision that does not give rise to a private right of action.[6]

18 U.S.C. 2511(1)(a) states:

(1) Except as otherwise specifically provided in this chapter any person who –

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;

> shall be *punished* as provided in subsection (4) or shall be subject to suit as provided in subsection (5). (Emphasis added).

Subsection (4) states that:

> (a) Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title and imprisoned nor more than five years, or both.

> (b) Conduct otherwise an offense under this subsection that consists of or relates to the interception of a satellite transmission that is not encrypted or scrambled and that is transmitted–

>> (i) to a broadcasting station for purposes of retransmission to the general public; or

---

[6] Attorney Kate Loos indicated in oral arguments before Judge Hicks that this court, in ruling on the first Directv default case, was "fairly silent about what she thought about 2511 and how it applied to these cases." Ms. Loos did not identify the case to which she was referring by name. In subsequent cases, however, this court has been very clear in stating that 2511 does not contain a private right of action. See e.g., *Directv v. Green*, No. 04-0136 (LAWD July 1, 2004); *Directv v. Robertson*, 03-940 (LAWD Jun 15, 2004); *Directv v. Hammond*, 04-0223 (LAWD July 1, 2004).

(ii) as an audio subcarrier intended for redistribution to facilities open to the public, but not including data transmissions or telephone calls, is not an offense under this subsection unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.

(5)(a)(i) If the communication is--

(A) a private satellite video communication that is not scrambled or encrypted and the conduct in violation of this chapter is the private viewing of that communication and is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain; or

(B) a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct in violation of this chapter is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the person who engages in such conduct shall be subject to suit by the Federal Government in a court of competent jurisdiction.

18 U.S.C.A. § 2511

In a recent decision, Directv's right to pursue a cause of action based on a violation of 18 U.S.C. §2511 was upheld by the U.S. Court of Appeals for the Fourth Circuit in *Directv v. Nicholas*, 403 F.3d 223 (4th Cir. 2005). In *Nicholas*, the court considered whether Directv could maintain a civil action under the Federal Wiretap Act, 18 U.S.C. §§2510, *et seq.*, against an individual who Directv alleges has intercepted the company's encrypted satellite transmissions. The Fourth Circuit held that Directv can bring a claim under 18 U.S.C. §§2511(1)(a) and 2520(a) against a person who Directv alleges has unlawfully intercepted such transmissions. The court distinguished between

claims based on violations of §2512, which it concluded were not permitted[7], and claims based on violations of §2511, which it concluded were permitted. The *Nicholas* court stated:

> under the plain language of the statutes, there is nothing to indicate that § 2511 excludes from its application intentional interceptions of encrypted satellite transmissions, as opposed to nonencrypted satellite transmissions. Moreover, there is nothing in the plain language of § 2520 to indicate that the interception of encrypted satellite transmissions would not fall under the general damages provisions of subsection (c)(2), which provides for certain specified damages "in all other cases" (*i.e.*, in all cases of § 2511 violations except those specifically listed in subsection (c)(1)). Directv Inc. v. Nicholas 403 F.3d 223, *228 (C.A.4 (N.C.), 2005).

This court respectfully disagrees with the finding of the Fourth Circuit in *Nicholas, supra*. §2511(a)(1) refers to subsection (4), which is a criminal penalty. §2511(a)(1) also refers to subsection (5), which refers only to nonencrypted signals and specifically allows the Federal Government to file a suit in a court of competent jurisdiction. The clear language of the statute allows no private right of action. Indeed 2520 says "a civil action may be brought" which 2511 clearly does not state. It is absurd to think that Congress would clearly enumerate such a right in 2520, yet omit this language in 2511 when intending to grant a right of action.

18 U.S.C. 2520(c)(1) applies damages only to communications that are not scrambled or encrypted. §2520(c)(2) states:

> (2) In any other action under this section, the court may assess as damages whichever is the greater of -
>
> > (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

---

[7] This court previously ruled that Directv could not proceed under §2512 and they have dropped that claim.

9

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

§2520(2) applies to any other action *under this section*, not under §2511. There is no question in this case that the signal was encrypted. This court finds that Directv cannot allege a violation of §2511 by asserting a private cause of action under §2520, as §2520 applies only to private satellite video communications that are not scrambled or encrypted. §2511 is a criminal provision that does not give rise to a private right of action.[8]

By failing to answer Directv's Request for Admissions, Drews admitted that he used pirating devices for several months. The account records for Drews support the finding that he intercepted Directv's signal for his own benefit or for the benefit of another for several months. Drews maintained a basic subscription at a cost of $32.00 per month for March, 2001 until March 2003, when he purchased premium programming for a few months. Service was disconnected on May 31, 2003. Directv alleges that Drews intercepting Directv's signal for approximately two years while maintaining a basic subscription.

James Whalen's testimony is that the bill for the average high end subscriber of Directv programming is approximately $229.08 per month.[9] Directv asserts that this is a conservative

---

[8] The Fifth Circuit opinions cited by the plaintiff, *Directv v. Minor*, 2005 WL 1870779 (5th Cir. 2005), and *Directv v. Robson*, 2005 WL 1870775 (5th Cir. 2005), do not hold that there is a private right of action pursuant to 18 U.S.C. 2511. Both of these cases involve the reversal of summary judgments granted to the respective defendants. The court discussed what burden of proof is necessary to sustain a summary judgment on "interception" under the statutes. At best the statement that Directv could pursue civil actions under 18 U.S.C. §2520 based on violations of 18 U.S.C. 2511 is dicta. The Fifth Circuit did not discuss the private right of action under 2511, therefore this court is not bound by these decisions.

[9] Affidavit of James Whalen, ¶ 22.

estimate of its loss because a person with unlimited access to all programming is likely to obtain a much greater benefit.

The evidence shows that Drews purchased the last of the equipment that made him capable of pirating the Directv signal in March, 2001. Drews continued to receive Directv service through May, 2003. Therefore, the court will award damages of $ 6000.00 pursuant to §605(e)(3)(c)(i)(II).[10] The request for costs of $ 514.80 and reasonable attorneys' fees in the amount of $ 7,606.00, plus post judgment interest as provided by law, is well-supported in the record and will be granted.

## Injunctive Relief

Directv also requests injunctive relief under the provisions of the Communications Act and the Surreptitious Interception Act. The Communications Act provides as follows:

> (E)(3)(B)(ii) The court may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of [the Communications Act]."

See 17 U.S.C. § 502(a); 15 U.S.C. § 1116. *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 735 F.Supp. 1334, 1342 (S.D.Tex.,1986).

This court previously found that Directv did not establish irreparable harm on a motion for default judgment[11]. Judge Melancon in the Lafayette Division also denied injunctive relief in a

---

[10] The plaintiff has not proven damages pursuant to §605(e)(4). §604(e)(4) refers to any person who "manufactures, modifies, imports, exports, sells, or distributes any electronic, mechanical or other device or equipment...". There is no evidence in the record that Bennett did anything other than buy equipment for his personal viewing.

[11] *Directv v. Hammond*, 04 CV 0223 (LAWD June 1, 2004).

similar case.[12] Yet, Judge Polozola concluded that injunctive relief was appropriate.[13] Judge Polozola found that irreparable harm would result if injunctive relief were not granted and that there was no other adequate remedy available.

In order to obtain a preliminary injunction, the movant must generally establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to the nonmovant; and (4) the injunction would not be adverse to the public interest." *Haitian Refugee Ctr. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir.1995); *Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.*, 621 F.2d 683, 685 (5th Cir.1980); *Compact Van Equip. Co. v. Leggett & Platt, Inc.*, 566 F.2d 952 (5th Cir.1978); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir.1975). Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief, and even if the claim is compensable by damages, an injunction may issue to protect that remedy. *Productos Carnic*, 621 F.2d at 686. Under Section 605, a movant need only prove a violation or a likelihood of a violation of § 605(a) occurring after December 29, 1984, in order to request an injunction under § 605(d)(3)(B)(i). *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 735 F.Supp. 1334, 1342 -1343 (S.D.Tex.,1986).

This court has previously denied an injunction and will do so again. Several cases which have granted injunctive relief involved that actual sale of decoder kits that were capable of unscrambling subscription television programming. See *ON/TV of Chicago v. Julien*, 763 F.2d 839

---

12     *Directv v. Fontenot*, 03-2166 (LAWD February 24, 2005).

13     Transcript attached as Exhibit "F" under seal.

(7th Cir. 1985); *Chartwell Communications Group v. Westbrook*, 637 F.2d 459 (6th Cir. 1980); *Time Warner Cable of New York City v. Freedom Electronics, Inc.*, 897 F.Supp. 1454 (S.D. Fla., Aug. 11, 1995). *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 735 F.Supp. 1334 (S.D. Tex. 1986), dealt with an action to enjoin a hotel from unauthorized interception and transmission of programming. The only case that concerned an individual defendant is *International Cablevision, Inc. v. Cancari*, 960 F.Supp. 28 (W.D. N.Y. 1997). The court in *Cancari* merely stated that the plaintiff had shown that the defendant had violated the federal statute, therefore permanent injunctive relief was appropriate.

The showing of irreparable harm is the most important prerequisite for the issuance of an injunction. *Chalmers v. Marks*, 2003 U.S. Dist. LEXIS 22765 at 7 (N.D. Tex. Dec. 17, 2003). Irreparable harm is an injury that is neither remote nor speculative, but actual, imminent, and unable to be remedied by an award of monetary damages. *Johnson v. New Orleans Jazz & Heritage Foundation, Inc.*, 1999 U.S. Dist. LEXIS 7038 at 18 (E.D. La. May 10, 1999). The possibility that adequate compensatory relief is or will be available through litigation, weighs heavily against a claim of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

In Directv's actions against individual end-users, a suit seeking monetary damages is an adequate and available remedy. To issue an injunction against known and unknown individuals, who at some unknown time in the future, may acquire and use pirating devices, would be tantamount to issuing an injunction prohibiting anyone from shoplifting at Wal-Mart. Injunctions are not appropriate as a blanket prohibition to future illegal actions. That is what §§ 605 is for. This is a remote and speculative injury not conducive to the issuance of an injunction.

13

Based on the cases provided by the plaintiff, this court does not see a compelling reason to change the prior decision that injunctive relief is not appropriate in this case.

Lake Charles, Louisiana, this 4 day of ~~September~~ October, 2005.

*signature*

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE 10/04/05
BY
TO